## W. TIN YAN, TRUSTEE OF THE ESTATE OF L. AH CHAP, A BANKRUPT, *v.* L. AH CHAP, CHONG MEU LAN AND LEU LEN SHIN.

### July 21, 1915.

1. *Resulting trust—Transfer of property by husband to wife:* Defendant husband took lease in his own name; afterward defendant wife made advances for rent, expenses and improvements of leasehold on his promise to transfer improvements to her after completion. Before such advances, husband defendant advertised the lease for

sale because he did not have money enough to build, and she would not advance money because the lease was not in her name. *Held,* no foundation for resulting trust in favor of the wife. "Such a trust must arise at the time of purchase; it cannot arise by after advances."

2. *Transfer of property by insolvent husband to wife:* Transfers of property to a wife by insolvent husband are viewed with distrust by courts. Substantial testimony besides that of husband and wife, essential.

3. *Bankruptcy—Settlements of results of mutual enterprise on wife—Rights of creditors:* An attempt to make a voluntary settlement of the results of a mutual enterprise for the family benefit, in favor of the wife, the husband being insolvent, is in derogation of the rights of creditors.

4. *Contracts and agreements between husband and wife:* Agreement by husband to transfer property to wife in consideration of advances of money by her for improving the same, void as against creditors.

5. *Equitable interest of wife in mutual venture for family support, or otherwise:* A husband being solely responsible for the support of the family, wife entitled to advances made by her to family venture as a creditor in equity of her husband; also so entitled to contributions to mutual business investment.

6. *Admissions:* An admission of a respondent to a petition for adjudication in bankruptcy, of an allegation charging him with a conveyance of property with intent to hinder, delay, and defraud his creditors, is sufficient, without explanaion, for the cancellation of such conveyance.


*In equity:* Bill to set aside fraudulent conveyance.


*W. B. Lymer* for complainant.

*J. Lightfoot* for respondents.


DOLE, J. The defendant, L. Ah Chap, as Ah Chap doing business as the American Dry Goods Company, was adjudicated a bankrupt in this court on the 15th day of April, 1914, on the petition of M. Phillips & Company, H. Hackfeld & Company, Limited, and Theo. H. Davies & Company, Limited, who in their petition alleged as an act of bankruptcy, that the said Ah Chap, within four months

preceding the filing of the said petition, to-wit, on the 18th day of March, 1914, and being then insolvent, conveyed to his wife, Chong Meu Lan, a certain lease, with intent to hinder, delay and defraud his creditors.

The present action was brought May 23rd, 1914, by W. Tin Yan, the trustee of the estate in bankruptcy of the said L. Ah Chap, against him, the said bankrupt, and Leu Len Shin, the intermediary assignee of the said lease, and the said Chong Meu Lan, to whom the said lease was assigned by the said Leu Len Shin, as the bona fide grantee, praying that the said assignment and another previous assignment to the same effect, executed but not delivered, the consent of the lessor thereto not having been obtained, be cancelled as fraudulent and that the said leasehold estate be decreed to be vested in such trustee.

The answer of L. Ah Chap admits the transfer of the lease to his wife but denies that it was done with intent to hinder, delay and defraud his creditors. He alleges that the improvements on the leasehold cost approximately four thousand dollars of which his wife contributed about fifteen hundred dollars, and that he had further used the rents rendered available by reason of the new buildings for payment of the debts due on account of the construction thereof. He further answers that, being in debt to Allen & Robinson, Limited, for goods, wares and merchandise sold to him and used in the said buildings, in the amount of eight hundred dollars, he borrowed that amount from the Honolulu Dry Goods Company giving therefor four promissory notes in the amount of two hundred dollars each and with such funds paid his debt to Allen & Robinson, Limited; that the the said Chong Meu Lan, his said wife, had endorsed the said promissory notes.

The respondent contends in his answer, that by reason of such facts the said leasehold, although in his own name, was of right the property of his said wife, and that in executing the said assignment to his said wife he did not

intend thereby to hinder, delay or defraud his creditors but merely to place the property in the name of the "actual" owner thereof.

The answer further denies that the defendant Leu Len Shin acted in the matter of the said assignment with the purpose of aiding the said L. Ah Chap in the accomplishment of any fraudulent purpose; and he further denies that he had any fraudulent intent in relation to the said transaction of which the other defendants had knowledge.

The other respondents answer formally, denying any fraudulent intent in relation to the said transaction of which the other defendants had knowledge.

The other respondents answer formally, denying any fraudulent intent or any knowledge of any fraudulent quality in the assignment of said lease.

It appears that at the hearing of the petition for adjudication in bankruptcy, April 15, 1914, counsel for L. Ah Chap asked that paragraph seven in the petition be stricken; counsel for the petitioner then consented to the withdrawal of this paragraph, upon the admission by counsel for the alleged bankrupt of the other act of bankruptcy alleged in the petition and, generally, all of the other allegations. This was agreed to by the latter. The following is a copy of the paragraph so withdrawn:

"That within four months preceding the filing of this petition, namely, during the month of March, 1914, the said Ah Chap, while insolvent, committed an act of bankruptcy in that he transferred, removed and concealed and permitted to be removed, transferred and concealed, and is now attempting to transfer, remove and conceal certain of his property with intent to hinder, delay and defraud his creditors."

The other act of bankruptcy referred to as admitted, is paragraph six of the petition, and is as follows:

"That within four months preceding the filing of this petition, viz., on or about the 18th day of March, 1914, the said Ah Chap, while insolvent, committed an act of bank-

ruptcy, in that he caused to be transferred and conveyed from himself to his wife, Chong Meu Lan, by himself conveying to one Leu Len Shin, and causing and procuring the said Leu Len Shin to convey to his said wife, Chong Meu Lan, with intent to hinder, delay and defraud the creditors of the said Ah Chap, certain of his property of great value, to-wit, that certain leasehold from Mary P. Puuiki, dated June 17, 1911, for the term of twenty-five (25) years from said date."

This incident is testified to by Mr. O. P. Soares, the official reporter who was acting as such upon the occasion mentioned, and is further supported by the endorsement of the presiding judge, Hon. Charles F. Clemons, upon the margin of the petition in bankruptcy, opposite the said paragraph seven. The introduction of this incident into the evidence was followed by a motion to strike which was not allowed.

No immediate advantage was taken of such admission by counsel for the petitioner, and the court proceeded to hear further testimony.

The evidence introduced in behalf of the respondents was aimed, mainly, to substantiate the theory of a resultant trust to the wife or, in the alternative, to show that the assignment of the lease to her was the execution of an agreement therefor as the consideration of the money received.

It appears from the testimony of the wife that before she advanced any money on account of the lease, L. Ah Chap had procured the lease in his own name. Then after he had promised to make it over to her, "after it is complete," referring probably to proposed improvements on the leasehold, she began to make advances; first, one hundred and fifty dollars for rent and expense, and later other amounts. The lease was executed June 17, 1911, and was to go into effect, according to its provisions, July 1, 1911. It is in evidence that on the 7th day of July, 1911, L. Ah Chap advertised the lease for sale in a Chinese newspaper. He explains that he did this "because I didn't have enough

money to build and she wouldn't advance me the money because she said the lease wasn't in her name. I can take the lease and go out and sell it."

[1] There does not appear in this transaction any foundation for a resulting trust in favor of the wife. The husband took the lease in his own name. Later he advertised his lease for sale, and then when his wife agreed to make advances of money for matters relative to such lease he gave up his plan of selling it. "Such a trust must arise at the time of the purchase; it cannot arise by after advances." *In re Wood*, 5 Fed. Cas. 443, 446; *Olcott v. Bynum*, 84 U. S. 44, 59; 1 Perry on Trusts, 5th ed., secs. 124, 133.

With this conclusion the question arises whether the assignment of the lease to the wife may be supported as the execution of an agreement therefor for which the money advanced by her was the consideration; or is she only a creditor entitled to her pro rata with other creditors; or were her advances of money merely contributions to a common enterprise for the benefit of both husband and wife as a family? There is no support in the evidence to the theory that such advances were gifts to the husband.

In their testimony both L. Ah Chap and his wife try to show that the lease was the wife's enterprise from the beginning and that the husband was only concerned in it as an agent for her. He says, in reference to fifteen hundred dollars which his wife paid him to "help along", as he said at first, in the matter of improvements on the leasehold, that "I don't borrow any money from her. She gave me this money to attend to her own business." His testimony appears to become more definite, from day to day, as the case progresses, in the direction of the theory that it was solely his wife's enterprise. Some light is thrown upon this development in his mind through his testimony given before the referee in bankruptcy in May, his testimony here having been given in July and August. The objection of

his counsel to the admission, in the trial, of his testimony before the referee was overruled. In such testimony he said that the lease belonged to him but his wife also had a money interest in it; that she put fifteen hundred dollars into it and that he put in more than a thousand dollars. He admitted that he transferred the lease to his wife in order to protect her in her investment of the fifteen hundred dollars which she had put into it. In answer to the question, "And it was this fifteen hundred dollars she put into the building that you wanted to secure her in by this assignment?", he said, "When I borrowed the money from her, she wanted me to sell the property to her, or buy it in her name, but I did not pay any attention to her because she is my wife.'" He further said in such testimony in May, that he borrowed eight hundred dollars from the Honolulu Dry Goods Company for the building expenses and mortgaged the lease to secure it. In his testimony in this court in July he said he was acting for his wife when he signed the notes for the eight hundred dollars. As stated above, he said in May that he had put more than a thousand dollars into the building fund, in addition to the fifteen hundred dollars advanced by his wife, whereas in July he testified that outside of the fifteen hundred dollars, the money was procured by borrowing from loan associations and giving notes, some of which were signed by his wife and endorsed by her, he acting for her.

Some further light is obtained by reference to the schedules sworn to by him April 28, 1914, and filed in the bankruptcy proceedings of L. Ah Chap, May 5, 1914. In "Schedule A (2), creditors holding securities", is the following entry:

| Names of creditors | Residence | Description of securities | When and where contracted | Value of securities | Amount of debts |
|---|---|---|---|---|---|
| Honolulu Dry Goods Co. | Honolulu | Mort. on lease from Mary Kahai Puuiki and Mary Kahai, dated June 17, 1911, to me | Nov. 21, 1911, at Honolulu | $4,500. | $800. |

Mary Kahai Puuiki, the landlady, who has no interest in the present issue, as far as appears, says that Ah Chap first came to her in March, 1914, to ask her to consent to the assignment of the lease to his wife, and that he came more than four times. On his first visit he gave as a reason for the proposed assignment, that he was going to China, to be absent a year. At his second visit he urged the immediate execution of the assignment because the vessel on which he was to embark for China was to sail the following week. She also said the papers he brought for her to approve were not the same as Exhibits 5 and 6 for the respondents, shown to her in court; also, contrary to testimony of Ah Chap, that he had not visited her in regard to the assignment before March, 1914.

Five witnesses were introduced to support the theory that the improvements on the leasehold were in Mrs. Ah Chap's interest. The first, Wong You, said in reply to the following question, "I'll ask you if in the month of November, 1911, you had any business dealings with Mrs. Ah Chap?", "She was building some buildings that year, and she said she didn't have enough money, and asked me for a loan", which he says he gave her. Plaintiff's Exhibit D is a note for four hundred dollars in favor of Wong You, signed by Chong Meu Lan—the wife, and endorsed by Liu Chap—the husband. On cross-examination, he says it was Ah Chap who told him that Mrs. Ah Chap was building. Also that in 1911 and 1912, he was lending money to Ah Chap but couldn't say how much he loaned Ah Chap for himself and how much for his wife. Then on redirect he could not remember that he loaned Ah Chap any money in 1911. The next witness, Liu Dai, after the following question, "Do you know anything about a money loan association in the year in August, 1911, in which Mrs. Ah Chap was interested?", said she heard Mrs. Ah Chap speak to her (Liu Dai's) husband about borrowing money for a building she had started. The third witness, Ching

Kim Chong, was asked this question: "Do you know anything about a money loan association in which Mrs. Ah Chap was interested in the year 1911, month of August?" The interpreter asked the counsel before the witness replied, "Is it Ah Chap or Mrs. Ah Chap's loan?" Counsel answered, "Mrs. Ah Chap." The witness then said, in answer to the original question, "I do." On being asked if she acted for herself or through her husband, the witness replied, "His wife spoke to my wife; my wife asked me about it, then I decided to assist them for this purpose of building a house." On cross-examination he said that "when they got the money", Mrs. Ah Chap came and said she wanted the money to build a house. Respondent's Exhibit 3 was produced and identified as the note of Chong Meu Lan (Mrs. Ah Chap) in favor of Ching Kim Chong for the first loan of fifty dollars. The note is endorsed L. Ah Chap. The next witness, Chun How, in answer to the question, "In the month of December, 1911, did you have any business dealings with Mrs. Ah Chap?", and following questions, said that he did and loaned her four hundred dollars on her asking for it to build a house, and she gave her note for it, which was produced as plaintiff's Exhibit E, a note for four hundred dollars in favor of Chun How, signed Chong Mew Lan and endorsed Liu Chap. Witnees further said the building in question was not then begun, then that he thought it was begun, then, when told that Ah Chap had testified that the house had been finished in September, that he did not know when it was begun or finished but that he did know that she came to borrow money for that purpose. The note is dated December 1, 1911. The note was paid by Ah Chap in instalments. It was brought out on cross-examination that witness and another were endorsers of a note signed by Ah Chap for four hundred dollars, and that the time of payment was two months later. In regard to advertising the lease for sale, he said, "They didn't have any money to build the house on it,

then Mrs. Ah Chap she didn't want to sell it and he thought he could borrow money to build on it." L. Seu Chun, the last witness in support of Mrs. Ah Chap on this point, has been the manager of the Honolulu Dry Goods Company since it started. He said that when he saw the advertisement of the lease for sale he expostulated with Ah Chap, who said, "He got no money he want ask his wife get money to build." He then went to Mrs. Ah Chap and upbraided her for not furnishing the money. She said, "That lease sign to Ah Chap." Witness replied, "That's all right, you dig up money, by by pay up he sign to you just the same." He also testified to the loan of eight hundred dollars to Ah Chap in relation to the building, and that he received therefor from Ah Chap four notes of two hundred dollars each, secured by a mortgage of the lease. These notes and mortgage were dated November 21, 1911; the notes were endorsed Chong Mew Lan (Mrs. Ah Chap), March 19, 1914.

[2] I have quoted thus largely from the testimony, as transfers of property to a wife by an insolvent husband are viewed with mistrust by courts.

"In transactions between husband and wife, which are impeached as fraudulent, it requires less proof to sustain the impeachment, and more and stricter proof to repel it, than would be required if the transaction were between strangers. A transfer of property, either directly or indirectly, by an insolvent husband to his wife, is justly regarded with suspicion; and unless it is clearly shown to be entirely free from an intent to withdraw the property from the husband's creditors, or the presumption of fraud be overcome by satisfactory affirmative proof, it will not be sustained." *Zinn v. Law et ux.,* 9 S. E. 873.

Substantial testimony, besides that of the husband and wife, is considered essential in such cases. The case, *In re Teter,* 23 Am. B. R. 228, 229, emphasizes this in efforts to establish a resulting trust in favor of the wife, but the rule

applies equally to the case before the court in its present phase.

Goo Peang, a witness for respondents, according to his story, was the one who first informed the Ah Chaps that the place in question was for lease, and went with them to see the lot. He said further that in about a month after the lease was obtained, Ah Chap wanted to sell it. In answer to the question, "Was there anything said as to who the leasehold was to belong to?", Goo Peang, after stating that the lease was made to Ah Chap, said, "How they settled afterwards and understood each other, I do not know". Goo Peang was an old acquaintance of Ah Chap's and appeared to hold the position of a confidential friend. He it was to whom the lease was assigned in 1913 by Ah Chap, in order that he should assign it to Mrs. Ah Chap, which he did. This assignment does not figure in the case as evidence of title in Mrs. Ah Chap, it not having been endorsed by Mrs. Kahai, the landlady, but merely to show previous intention on the part of Ah Chap.

Taking all of the evidence together, there is much that is conflicting on the question of an agreement by Ah Chap to transfer the leasehold to his wife. The wife did not make the mortgage of the lease to the Honolulu Dry Goods Company, as she says she did; and the notes that were secured by this mortgage she did not endorse until March 19, 1914, the day after the lease was assigned to her, as complained of in the bill. Was her endorsement of such notes made in consideration of the assignment of the lease to her? Evidently Ah Chap was not telling the exact truth when he said in July that he was acting for his wife when he signed the four notes to the Honolulu Dry Goods Company; otherwise he would not have included them as one of his debts in his bankruptcy schedule in April, together with his mortgage of the lease ; and evidently he was not telling the truth when he said in July, "I didn't borrow any money from her (Mrs. Ah Chap). She gave me this

money to attend to her own business"; otherwise he would not have said in May before the referee that the lease "belonged to myself but my wife had money invested too. . . . My wife put up fifteen hundred dollars and I put up more than one thousand dollars and I borrowed some money from other people. . . . When I borrowed the money from her, she wanted me to sell the property to her, or buy it in her name. . . . She growled me every day, so this year I do what she talked to me." Again in July, apparently forgetting for the moment his plan of defense, he gave as a reason to the court for his assignment of the property to his wife, that, "I had sometimes ago borrowed a little over a thousand dollars from my wife and built a house", and wanted to secure her so that she would not lose the thousand dollars she had advanced. Then there is the allegation of his answer to the complaint, in which he says that he borrowed the eight hundred dollars from the Honolulu Dry Goods Company to pay Allen & Robinson for goods, etc., sold to him and used in the buildings under consideration.

Much more might be done in analyzing the testimony for the defense. The further it is investigated the more defective it appears. Counsel for the defense, admitting the weakness of Ah Chap's testimony, appeals for a favorable view for the testimony of the wife. But her husband's testimony in May, and his acts in April, in relation to his bankruptcy, not only have undermined his testimony in this court, but have greatly tended to weaken hers. Her supporting witnesses with the exception of L. Sen Chun, have nothing whatever to say about any agreement between husband and wife. These agree, with almost parrot-like unanimity, that she was looking for money with which to build a house. L. Sen Chun speaks of the advertisement of the lease for sale, upon seeing which he expostulated

with Ah Chap, who said he had no money for improving the leasehold, and wanted witness to talk with Mrs. Ah Chap about getting money; witness did so and blamed her for not furnishing money. She excused herself on the ground that the lease was made to Ah Chap. Witness encouraged her to furnish the money with the expectation that when, as I understand his testimony, the improvements were paid for, Ah Chap would transfer the lease to her. Here is no evidence of an agreement.

[4] Mrs. Ah Chap's notes, introduced in evidence as vouchers of money raised for this enterprise, are uniformly endorsed by Ah Chap; and his four notes in favor of the Honolulu Dry Goods Company were endorsed eventually by her. These notes, except those in favor of the Honolulu Dry Goods Company, have all been paid by Ah Chap out of the rents of the improved leasehold. The undertaking, under all the circumstances disclosed by the evidence, looks like an enterprise mutually entered into by husband and wife for the family benefit, to be managed by the husband. If it was a part of this scheme to have the business carried on in the name of the wife, it was in derogation of the rights of the creditors of the husband, as it was an attempt to make a voluntary settlement of the results of his business management and of a portion of his property as well, in favor of his wife. The decision in the case of *Glidden, Murphy & Company v. Taylor*, 16 O. St. 509, 521, comments upon a somewhat similar project as follows: "The principle of the arrangement would be the same whether it embraced property which he had already acquired or only his future acquisitions; and if the arrangement be valid as against creditors for the period of about four years that elapsed from the time of its date to the time of the trial, it may be continued during the joint lives of the parties, if they so elect."

Of course a husband and wife are disqualified from entering into partnership relations with each other. 1 Bates

Laws of Partnership, sec. 140; *Lord v. Parker,* 85 Mass. 127, 129. An attempt to enter into such partnership, and the investment of funds by the wife in the supposed firm, would make her a creditor of her husband or of the firm, if there were other partners, at least in equity. *Lord v. Davison,* 85 Mass. 131, 133. And yet by our statutes a married woman may not enter into a contract with her husband, (Rev. Laws, Haw. 1915, sec. 2951) nor sue him or be sued by him (Id., sec. 2954). This would seem to neutralize any contract or agreement which may have been made between them, as to her advances of money on account of improvements to the leasehold and a promise by him, in consideration thereof, to transfer the leasehold to her, even if the evidence sustains the contention of the existence of such agreement, which it cannot confidently be said to do. As the case stands, it fails both on the facts and the law to sustain the contention of Ah Chap and his wife that she is entitled to hold the lease as the real and equitable owner thereof.

Having acquired jurisdiction, the court will proceed under the rule, to dispose of the whole case as it has developed under the pleadings and evidence, and particularly to determine the rights of Chong Meu Lan in relation to the leasehold, the transfer of which to her is complained of as fraudulent.

[5] The question remains whether Mrs. Ah Chap has in equity a rightful claim for the advances she has made toward the improvement of the leasehold? It appears to be well established by the evidence that she advanced from her own money sixteen hundred and fifty dollars, Upon the theory suggested, that the lease affair was an enterprise for the benefit of the family, she was not required to contribute to such venture, the husband being solely responsible for the support of the family, Rev. Laws, Haw. 1915, sec. 2956. In the *Glidden* case, referred to above, the court

says, after adjudging the settlement as to the wife to be void, "The only remaining questions, in this aspect of the case, is as to the extent of the equity of the wife in the property. As the plaintiffs are, in equity, seeking to divest her of the title, she is, as against them, entitled to protection to the extent of her right; and, as we have already remarked, the most favorable position she can claim to occupy is that of a creditor in equity of her husband, and, as such, entitled to her money and interest." In that case the profits of the venture were used both for the support of the family and for further investments. Whether the venture in this case was for family support or was merely a business speculation, Mrs. Ah Chap is entitled to the money she put into it as a creditor in equity of her husband.

[6] I have dealt with this case upon the main issue as exhibited by the pleadings and the evidence in general, leaving out of consideration the extraordinary admission made by the counsel for the bankrupt, referred to in the early part of this opinion; which in itself was sufficient as it stood, without explanation, had the plaintiffs counsel pressed it, to have justified the cancellation of the assignments complained of.

An attempt was made by the defense to show that Ah Chap's testimony before the referee which is inconsistent with his testimony before the court, was due to the interpreter, who used a different Chinese dialect than the one most familiar to Ah Chap. This has failed, and partly so through Ah Chap's own testimony on the point, in addition to the testimony of others.

I find that the prayer of the complaint, that the two assignments of the lease in question be cancelled and that the leasehold estate therein described be decreed to be vested in complainant, should be granted; and also that a claim of sixteen hundred and fifty dollars should be allowed against the said bankrupt estate in favor of the said

Chong Meu Lan, the wife of the said bankrupt, costs to be divided equally between the complainant and Mr. L. Ah Chap.